This case comes up on a motion for a new trial, grounded upon a supposed misdirection of the presiding judge, who stated to the jury that if they believed the facts to have been as related by the witness Deans, the prisoners, were both guilty of the charges specified in the indictment; and that the judge directed the jury that the agency which Lovet took in assisting Deans after his receiving the slave, in carrying them toSmithfield, was such an aiding, abetting, and consenting as made him principal and equally guilty with Barna. And it has been insisted for the prisoners that the receiving of the slaves and *Page 368 
carrying them to Smithfield by Deans, being by the consent of the owner, and the agency in that respect by Lovet, being by the consent of Deans, who is to be considered as the agent of the owner, that nothing which Lovet did in that particular can be said to be done invito domini, and consequently can amount to neither larceny nor seduction. And I think so too; and in that respect differ from the presiding judge. But to me it is clear that as it appears that both the persons brought the slave to the same place where he and the others were delivered, andthat being in execution of a plan completely matured, without the knowledge of the owner, and to which plan both persons were equally
privy, and in the performance of which they appear to have been joint
actors, that all the circumstances, taken together, constitute a complete seduction and larceny; and if the jury did believe them, they were well warranted in finding both defendants guilty. Had the charge (502) of the judge, therefore, been confined to this part of the transaction, I should have been well satisfied with it, and the verdict, also; but as it is impossible for me to say whether the jury found Lovet guilty upon this part of the evidence or upon that which related to his conduct after the delivery to Deans, I am constrained, though reluctantly to say that, on that account, and that only, the verdict as to Lovet must be set aside and a new trial granted.
I cannot, therefore, subscribe to the opinion of the Chief Justice, who holds that the finding as to Barna was right, but that Lovet, on account of the part he acted after the delivery of Deans, was aiding, abetting, and consenting, and should, therefore, have been found guilty as a principal in the second degree; for I understand the case expressly finds that both the prisoners knew the slave to be runaway and to belong to Pender: and it appears, also, that Lovet was privy to the plan, for he informed Deans he was to go with him, with the slaves; and though Lovet was not at McKinnie's mill where the project was finally completed, yet he was the messenger by whom Barna was requested to attend; and at the time and place the slaves were to be delivered, Lovet there appears equally engaged with Barna; and the excuse they allege for not being able to get the slaves farther, makes it impossible, to my view, that Lovet, so far, may be considered as anhonest agent. On the other hand, I am incapable of discovering any difference between the agency of the prisoners in this part of the transaction. It may be, and is probably so, that Lovet being (as I understand) the youngest brother, was stimulated and induced to act by the means or advice of Barna; but that he did act, and equally participated with Barna, in both the larceny and the seduction, I cannot doubt about. And if Lovet's conduct is to be considered in the light of an honest agentprevious to the *Page 369 
delivery made to Deans, there does not appear a particle of evidence to criminate him afterwards; for in no part of the case does it appear that he was at any time informed of the mistake he was under. This view of the case, therefore, would lead to the entire acquittal of Lovet, and ought, as I conceive, with the same force, to acquit Barna.
It is not necessary for me to express any opinion upon the (503) question raised in argument, whether principals in the second degree be ousted or not of clergy, as my opinion for a new trial is founded on a different reason; but if it was, I am very far from being satisfied
that such principal is not ousted by the act of Assembly in this case. The rule laid down by law writers admits of a distinction between cases where clergy is taken away from the offense and where from offenders underparticular circumstances. The act declares, "That if any person shall hereafter steal, or shall by violence, seduction, or any other means take or convey away any slave or slaves, the property of another, with intention to sell or dispose of to another, or appropriate to their own use such slave or slaves, and being thereof lawfully convicted, etc., shall be adjudged guilty of felony and suffer death without benefit of clergy."
Now, a slave, being goods and chattels, was at all times capable of being the subject of larceny, and the Legislature having ousted those who should be convicted thereof generally, and not confining it to a particular kind, or a larceny of a slave under particular circumstances, it would therefore seem to extend to all those who, in judgment of law, make principals, whether of the first or second degree. And it is this distinction which distinguishes murder and rape and the privately stealing from the person, for in the latter case the statute only ousts the clergy when the stealing was of a particular kind or under particular circumstances; so in the case of stabbing; so in the case of robbery in
dwelling-houses; in all which instances the Legislature having only taken away clergy against those who should be guilty of the offense under those circumstances, it extends to no others; and in the case of new
felonies the same rule must necessarily apply. Foster's Cro. Law, 355, 6. But in the cases of murder, rape, robbery, and burglary, the statute of Edw. VI. declares, "That no person that hath been or shall be convicted
of murder of malice prepense, or of robbing any one in or near the highway, shall be admitted to have his clergy"; and the statute of Elizabeth declares that if any person shall be found guilty of rape, he shall suffer death without benefit of clergy; yet in all (504) these cases the courts have uniformly held that persons "convicted"
of murder or robbery near the highway, etc., or persons "found guilty" of rape, whether principals of the first or second degree, were ousted. Fost. Cro. L., 357. *Page 370 
Our act of Assembly has not selected any particular kind of stealing of slaves, for the words, "with intention to sell, or dispose of to another, or appropriate to their own use," if they necessarily do relate to the word steal, are only such circumstances as must appear in every larceny, namely,causa lucri; and like laying murder with malice prepense as the statute of Edward; for in the hypothetical case put at the bar, of a taking and carrying with intent to liberate, if such was the motive of taking, I should have no difficulty in saying it was no felony, any more than if one individual throws his neighbor's property in a pit, or in any other manner destroys it. Such cases might be trespasses, or what in modern times have acquired the denomination of malicious mischief; but they are not felonious.
The result, therefore, seems to me this, that as to so much of the act as relates to a stealing of slaves, the oustings of the clergy is general, or, in other words, applies to the offense, which then will include principals of every denomination who before the passing of the act were liable to be convicted as such; and that it has not confined the exemption of clergy to offenders of a particular class.
These are but my impressions, occasioned more by general reading than from any particular examination of this case, and such as were hinted to the counsel in the course of the argument. As to Barna, I see no reason for disturbing the verdict in relation to him; and in respect to the objection that the slave was a runaway, that point was expressly determined in S. v.Davis, ante, 271, in this Court, and I am well satisfied with the decision. As to what relates to all the other objections, I think they are altogether insufficient, and that the rule must be discharged.
HALL and RUFFIN, JJ., concurred in this opinion; DANIEL, J., (505) having presided, and LOWRIE, J., absent.
NOTE. — See Dodd v. Hamilton, ante, 471. Upon the question of stealing a runaway slave, see S. v. Davis, ante, 271.
Cited: S. v. Hardin, 19 N.C. 417; S. v. Williams, 31 N.C. 145; S. v.Adams, 115 N.C. 782. *Page 371